No. 23-2699

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

v.

BRENDA CHRISTINE BARRY; ERIC CHRISTOPHER CANNON; and CALEB AUSTIN MOODY (dba SKY STONE),

Defendants-Appellants,

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:15-cv-02563 DDP
Hon. Dean D. Pregerson

_____

### *AMICUS* BRIEF OF ONGKARUCK SRIPETCH

_____

KENNETH P. WHITE
GREGORY T. NOLAN
TYLER C. CREEKMORE
Brown White & Osborn LLP
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
(213) 406-2949
*Attorneys for Amicus-Curiae*
ONGKARUCK SRIPETCH

# TABLE OF CONTENTS

STATEMENT OF *AMICUS CURIAE*'s IDENTITY, INTEREST, FILING AUTHORITY, REPRESENTATATION, AND CONTRIBUTION ........................ 5

INTRODUCTION ............................................................................................... 5

ARGUMENT ....................................................................................................... 6

    A.    *Liu* clarified that the SEC has disgorgement powers, but only under certain circumstances ..................................................... 6

    B.    The National Defense Authorization Act amended the statute governing the SEC's disgorgement powers ............................. 7

    C.    Circuit Split on the NDAA's Effect on *Liu* ............................................ 8

    D.    The Ninth Circuit Should Follow the Second Circuit's Approach and Require the SEC to Show that Investors were Harmed and Disgorged Funds Will be for the Benefit of Aggrieved Investors ............................................................. 11

    E.    The SEC Is Required To Prove Investors Were *Financially* Harmed, Which It Did Not Do Here ............................... 14

CONCLUSION .................................................................................................. 15

CERTIFICATE OF COMPLIANCE ..................................................................... 16

2

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cont'l Grain (Australia) Pty. Ltd. v. Pac. Oilseeds, Inc.*,
 592 F.2d 409 (8th Cir. 1979) ................................................................................ 11

*Epic Sys. Corp. v. Lewis*,
 584 U.S. 497 (2018) .................................................................................................9

*Kokesh v. SEC*,
 581 U.S. 455 (2017) ..................................................................................... 6, 7, 11

*Liu v. SEC*,
 591 U.S. 71 (2020) ........................................................................................ *passim*

*Morrison v. Nat'l Australia Bank Ltd.*,
 561 U.S. 247 (2010) ............................................................................................. 10

*SEC v. Ahmed*,
 72 F.4th 379 (2d Cir. 2023) ........................................................................ 8, 9, 14

*SEC v. Cole*,
 No. 17-56196, 2024 WL 445335 (9th Cir. Feb. 6, 2024) .................................. 10

*SEC v. Govil*,
 86 F.4th 89 (2d Cir. 2023) ................................................................................... 14

*SEC v. Hallam*,
 42 F.4th 316 (5th Cir. 2022) .......................................................................... 8, 11

*SEC v. Kasser*,
 548 F.2d 109 (3d Cir. 1977) ................................................................................ 11

**Statutes**

15 U.S.C. § 78u ................................................................................................ *passim*

15 U.S.C. § 78u(d)(3) .................................................................................................8

15 U.S.C. § 78u(d)(5) .................................................................................................6

15 U.S.C. § 78u(d)(7) ........................................................................................ *passim*

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

Actions Overview: H.R. 6395 – 116th Congress (2019-2020) ...............................13

CONG. RSCH. SERV., R47255, The Financial Crimes
　　Enforcement Network (Fin CEN): ANTIMONEY
　　LAUNDERING ACT OF 2020 IMPLEMENTATION
　　AND BEYOND, (2022) ......................................................................................13

ILLICIT CASH ACT, S. 2563, 116th Cong. (2019) ...............................................12

Securities Fraud and Investor Compensation Act of 2019,
　　S. 799, 116th Cong. (2019) ...............................................................................11

## STATEMENT OF *AMICUS CURIAE*'s IDENTITY, INTEREST, FILING AUTHORITY, REPRESENTATATION, AND CONTRIBUTION

Ongkaruck Sripetch is the appellant in *SEC v. Sripetch*, Ninth Circuit Case No. 24-3830, where he seeks to overturn a district court's award of disgorgement against him. His case is related to this one in only one way: Mr. Sripetch believes that were this Court to adopt his and appellants' argument that the SEC must prove pecuniary loss to obtain disgorgement, the disgorgement award in both cases must be reversed. The only person who has contributed to the cost of this brief is Mr. Sripetch.

## INTRODUCTION

In *Liu v. SEC*, the Supreme Court held that SEC disgorgement actions are subject to traditional equitable constraints, including that "the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." 591 U.S. 71, 80 (2020). Shortly after *Liu* was decided, Congress passed the National Defense Authorization Act ("NDAA"). The NDAA amended the statute governing the SEC's disgorgement powers. In its opposition to Appellant's appeal in this case, as in Mr. Sripetch's case, the SEC claims that the NDAA should be read to eliminate any requirement that it may have had before its passage of proving financial harm. (Opp'n at 56-60.) Specifically, the SEC argues that given

how quickly the NDAA was passed after *Liu*, it should be seen as repudiating any new requirement *Liu* imposed to prove pecuniary loss.

But the SEC has not engaged in a deep review of the legislative history of the NDAA. Had it done so, it would have discovered that the language amending the statute governing its disgorgement powers was written *before* the Supreme Court decided *Liu* and was originally written merely to make clear that the SEC may seek disgorgement *at all*, something that was an open question at the time the pertinent statutory language was written. This amicus traces that history to argue that something written before *Liu* should not be read as repudiating *Liu*.

## ARGUMENT

### A. *Liu* clarified that the SEC has disgorgement powers, but only under certain circumstances

Two years before *Liu*, the Supreme Court left open the question of whether disgorgement was available to the SEC under 15 U.S.C. § 78u(d)(5). *Kokesh v. SEC*, 581 U.S. 455, 461 n.3 (2017). That subsection states: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary *for the benefit of investors*." 15 U.S.C. § 78u(d)(5) (emphasis added). In *Liu*, the Supreme Court answered the question, holding "that a disgorgement award that does not exceed a wrongdoer's

6

net profits and *is awarded for victims* is equitable relief permissible under § 78u(d)(5)." 591 U.S. at 74 (emphasis added).

In reaching this ruling, *Liu* emphasized two separate, traditional principles in equity: (1) the wrongdoer should not profit, and (2) "the wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Id.* at 1944 (internal quotation marks and alterations omitted). While these principles are incorporated into § 78u(d)(5)'s language, the Supreme Court noted that before *Liu*, courts often applied the statute to award disgorgement in ways "that test the bounds of equity practice," including "by ordering the proceeds of fraud to be deposited in Treasury funds instead of disbursing them to victims . . . and declining to deduct even legitimate expenses from the receipts of fraud." *Id.* at 85.

### B. The National Defense Authorization Act amended the statute governing the SEC's disgorgement powers

Several months after *Liu*, Congress passed the National Defense Authorization Act ("NDAA"). The NDAA made changes to SEC enforcement actions, most notably for purposes of this case by adding subsection (d)(7) to 15 U.S.C. § 78u, which states: "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." 15 U.S.C. § 78u(d)(7). The

7

NDAA's changes to SEC enforcement actions apply to cases pending at the time the changes went into effect. 15 U.S.C. § 78u(d)(3).

### C. Circuit Split on the NDAA's Effect on *Liu*

The Fifth Circuit was the first to address the impact of the NDAA on the SEC's disgorgement powers. In *SEC v. Hallam*, the Fifth Circuit held that section 78u(d)(7) "authorizes disgorgement in a legal—not equitable—sense," allowing disgorgement to escape the equitable principles recognized in *Liu* and to permit the types of practices that *Liu* criticized, *i.e.*, funds need not be for the benefit of making investors whole. *SEC v. Hallam*, 42 F.4th 316, 338 (5th Cir. 2022). Part of *Hallam*'s reasoning focused on its interpreting subsection (d)(7) in light of subsection (d) as a whole. *Id.* at 339. In doing so, though, the Fifth Circuit conceded that "there is a potentially countervailing textual implication" to its interpretation. *Id.* at 340. The remainder of the Fifth Circuit's analysis concerned its framing of the NDAA as being a response to *Liu*. *Id.* at 339–41 (arguing the fact the NDAA was passed only six months after *Liu* suggests that it repudiates *Liu* and affirmed the disgorgement practices that *Liu* criticized.) As discussed below, however, the relevant language of the NDAA was written before *Liu*. Thus, viewing that language as a response to *Liu* is a mistake.

The Second Circuit took a different and more persuasive approach to disgorgement when it analyzed and rejected *Hallam's* rationale in *SEC v. Ahmed*,

8

72 F.4th 379, 395–96, 395 n. 7 (2d Cir. 2023). First, the Second Circuit in *Ahmed* relied on Supreme Court statutory interpretation authority to explain that "disgorgement" is traditionally considered an equitable remedy and "statutory reference to a remedy grounded in equity must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes." *Ahmed*, 72 F.4th at 396 (internal quotation marks and alterations omitted) (quoting *Liu*, 591 U.S. at 87, which itself was quoting other authority).

Second, "[t]he NDAA's text evinces no intent to contradict *Liu* or to strip disgorgement of 'limit[s] established by longstanding principles of equity.'" *Ahmed*, 72 F.4th a 396 (quoting *Liu*, 591 U.S. at 87). Inferring such an intent would be a mistake, the Second Circuit reasoned, given "the strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Ahmed*, 72 F.4th at 396 (quoting a Second Circuit case, which was quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)).

Third, "reading 'disgorgement' under § 78u(d)(7) as equitable disgorgement is consistent with the statutory history." *Ahmed*, 72 F.4th at 396. The Second Circuit emphasized that before *Liu* it was unclear whether the SEC could obtain disgorgement under section 78u(d)(5), so the Circuit reasoned the addition of

9

subsection (d)(7) should simply be understood "as a 'belt and suspenders' clarification that equitable disgorgement is available under the Exchange Act." *Id.*

### D. The Ninth Circuit Should Follow the Second Circuit's Approach and Require the SEC to Show that Investors were Harmed and Disgorged Funds Will be for the Benefit of Aggrieved Investors.

The Second Circuit's interpretation of *Liu* and the NDAA is the correct interpretation: the SEC is entitled only to equitable disgorgement to make financially harmed investors whole. While the Second Circuit's stated reasons for departing from the Fifth are persuasive on their own, there are three additional reasons to adopt the Second Circuit's approach. First, though the Ninth Circuit has not weighed in on the split, every Ninth Circuit case that Mr. Sriptech is aware of discussing *Liu* since the NDAA became law has done so under the belief that *Liu* is still good law and has discussed disgorgement in SEC enforcement actions as an equitable (not civil) remedy. *See, e.g.*, *SEC v. Liu*, No. 21-56090, 2022 WL 3645063, at *2 (9th Cir. Aug. 24, 2022) (favorably citing *Liu* and characterizing "disgorgement as an equitable remedy"); *SEC v. Cole*, No. 17-56196, 2024 WL 445335, at *2 (9th Cir. Feb. 6, 2024) (discussing disgorgement as an equitable remedy and vacating and remanding a disgorgement order to ensure that the amount awarded and its distribution is in accordance with *Liu*.)

Second, deference is due to the Second Circuit in securities litigation, given its widely recognized expertise in the subject matter. *Morrison v. Nat'l Australia*

10

*Bank Ltd.*, 561 U.S. 247, 276 (2010) (Breyer, J., concurring) (referring to the Second Circuit as the "Mother Court of securities law"); *Cont'l Grain (Australia) Pty. Ltd. v. Pac. Oilseeds, Inc.*, 592 F.2d 409, 413 (8th Cir. 1979) (same); *SEC v. Kasser*, 548 F.2d 109, 115 (3d Cir. 1977) (Second Circuit has "especial expertise in matters pertaining to securities.").

    Third, the language in the NDAA that became subsection (d)(7) to 15 U.S.C. § 78u was written *before* the Supreme Court decided *Liu*. Therefore, the Fifth Circuit's decision in *Hallam* is expressly premised on a false understanding that Congress passed the NDAA to respond to *Liu*. *Hallam*, 42 F.4th at 338. In fact, subsection (d)(7) was written to clarify what was an open question at the time of its writing: that disgorgement is an equitable remedy available in SEC enforcement actions. As a result, equitable principles requiring that disgorgement be used to compensate victims for financial losses, as explained in *Liu*, continue to govern.

    Legislative history tells the tale. In 2017, the Supreme Court questioned whether disgorgement was a permissible remedy in SEC enforcement actions. *Kokesh v. SEC.*, 581 U.S. 455, 461 n.3 (2017). In 2019, Senator Mark Warner introduced S. 799 "to clarify that the [SEC] may seek disgorgement and restitution as a result of a violation of the securities laws," among other reasons. Securities Fraud Enforcement and Investor Compensation Act of 2019, S.799, 116th Cong. (2019), *available at* https://bit.ly/3SSychE. Section 2(a)(3) of that bill proposed

11

adding a subsection (d)(7) to 15 U.S.C. § 78u. This proposed amendment contained remarkably similar language to what the NDAA added as 15 U.S.C. § 78u(d)(7) in 2021:

| **S.799 Language** | **Language Enacted with NDAA** |
|---|---|
| In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement of any unjust enrichment that a person obtained as a result of a violation of that provision. | In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement. |

The similarity is no coincidence. After its introduction, S.799 was then folded into section 502 of S.2563, the ILLICIT CASH Act, a bill that Sen. Warner introduced later in 2019. Section 502 of the ILLICIT CASH Act appears to be identical to much if not all of S.799, and it has the same above-quoted language about disgorgement. ILLICIT CASH Act, S. 2563, 116th Cong. (2019), *available at* https://bit.ly/49RmVon.

Then, in 2020, after the House and Senate passed different versions of the NDAA (and after *Liu*), a conference committee proposed a version of the bill that

12

would eventually become law. *See Actions Overview: H.R.6395 — 116th Congress (2019-2020)*, *available at* https://bit.ly/3SQTagN. The conference committee noted its version included several other pieces of then-pending legislation including the ILLICIT CASH Act. H.R. Rep. No. 116-617, at 2137, *available at* https://bit.ly/49qO95N. The conference committee's version amended 15 U.S.C. § 78u to add subsection (d)(7) in the language that it has today. *Id.* at 1267; *see also* CONG. RSCH. SERV., R47255, The Financial Crimes Enforcement Network (FinCEN): ANTIMONEY LAUNDERING ACT OF 2020 IMPLEMENTATION AND BEYOND, at 3–4 n.18 (2022), *available at* bit.ly/3UYfR5h (explaining that the Conference Committee included the ILLICIT CASH Act within the NDAA).

As such, while 15 U.S.C. § 78u(d)(7) was enacted after *Liu*, its language **predates that decision**. Tracing the language to its legislative origins shows that it was responding to a Supreme Court case that questioned *whether the SEC could even obtain disgorgement* at all(*Kokesh*), not a subsequent Supreme Court case that did not exist at the time (*Liu*).

As such, the Court should follow the rationale of *Liu* and the Second Circuit's interpretation of disgorgement requirements.

13

### E. The SEC Is Required To Prove Investors Were *Financially* Harmed, Which It Did Not Do Here.

Building on *Ahmed* and *Liu*, last year the Second Circuit held that disgorgement under both 15 U.S. § 78u(d)(5) and (d)(7) requires a finding that victims suffered pecuniary harm. *SEC v. Govil*, 86 F.4th 89, 103–04 (2d Cir. 2023). Since disgorgement is "an equitable remedy" focused on "'returning the funds to victims,'" the Second Circuit explained, it "presupposes pecuniary harm" because funds "cannot be returned if there was no deprivation in the first place." *Id.* at 103 (quoting *Liu*, 591 U.S. at 88). In reaching its decision, the Second Circuit relied upon *Liu's* characterization of an equitable remedy as one that "restores the status quo." *Id.* It reasoned that far from returning to the status quo, an award beyond proved financial harm would actually be a "windfall." *Id.* It also explained that financial harm cannot be presumed; it must be proved. *Id.* at 104 n.16.

*Govil* is hardly noteworthy. It explicitly recognized what was implicit from *Liu*: if disgorgement is about returning funds to the victim, as *Liu* indicates, 591 U.S. at 74 and 88, then the SEC must prove financial harm. [1]

---

[1] In a footnote, *Govil* states that "in some cases, the fraudster's ill-gotten gains . . . will exceed the harm [to the victim], and the victim may recover his loss and more. *Govil*, 86 F.4th at 103 n. 14. The SEC's brief emphasizes this footnote but fails to note that it is mere dicta. (Doc. 30.1 at 49-50.) It is dicta because *Govil* held that the SEC must prove pecuniary loss and reversed the district court because there was no proof of such losses. *Id.* at 111. Moreover, the Second Circuit did not analyze the above-quoted, footnoted language from *Govil* and did not cite authority to support it: it just said it. This bizarre language is at odds with the core analysis

14

## CONCLUSION

For these reasons above, the SEC must prove pecuniary loss to obtain disgorgement.

Dated: October 18, 2024    Respectfully submitted,

/s/ *Gregory T. Nolan*

KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
*Attorney for Amicus-Curiae*
Ongkaruck Sripetch

---

in *Govil*: as an equitable remedy, disgorgement cannot be used to create a "windfall," but merely to "restore the status quo." *Id.* at 103.

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that the *AMICUS* **BRIEF OF ONGKARUCK SRIPETCH** is proportionately spaced, in typeface of 14 points or more and contains 2,371 words, excluding parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

Dated: October 18, 2024                    Respectfully submitted,

/s/ *Gregory T. Nolan*

KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
*Attorney for Amicus-Curiae*
Ongkaruck Sripetch

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed **UNOPPOSED MOTION FOR LEAVE TO FILE *AMICUS* BRIEF BY ONGKARUCK SRIPETCH** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 18, 2024.

Dated: October 18, 2024  /s/    *Gregory T. Nolan*
KENNETH P. WHITE
TYLER R. CREEKMORE
GREGORY T. NOLAN
Brown White & Osborn LLP
333 S. Hope St., 40th Floor
Los Angeles, CA 90071
kwhite@brownwhitelaw.com
tcreekmore@brownwhitelaw.com
gnolan@brownwhitelaw.com
*Attorneys for Amicus-Curiae*